**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

NEW MEXICO PUBLIC SCHOOLS )
INSURANCE AUTHORITY, )
                         )
        Plaintiffs, )
                         )
     v. )      No.: 1:23-cv-01034-MV-GBW
                         )
EXPRESS SCRIPTS, INC. )
                         )
        Defendant. )

**<u>DEFENDANT EXPRESS SCRIPTS, INC.'S MOTION TO DISMISS THE
SECOND AND THIRD COUNTS OF PLAINTIFF'S AMENDED COMPLAINT AND
MEMORANDUM IN SUPPORT</u>**

      Defendant Express Scripts, Inc. ("Express Scripts" or "Defendant") moves under Federal

Rule of Civil Procedure 12(b)(6) to dismiss the second and third counts in the Amended Complaint

filed by Plaintiff New Mexico Public Schools Insurance Authority ("NMPSIA" or "Plaintiff"). As

set forth below, Plaintiff has failed to state a claim upon which relief may be granted because its

allegations are based in contract and Plaintiff may only seek recovery under its breach of contract

claim.

      Express Scripts previously moved to dismiss Plaintiff's original complaint and completed

briefing of that motion.  (ECF No. 6-7). In an attempt to correct the deficiencies raised in that

motion to dismiss, Plaintiff filed an Amended Complaint. (ECF No. 11). Express Scripts noted in

its reply to its prior motion to dismiss that the Amended Complaint still failed to state a claim.

(ECF No. 14).

      In order to ensure that Express Scripts is deemed to have responded to Plaintiff's Amended

Complaint, Express Scripts files the present motion to dismiss, which makes the same arguments

for dismissal raised in its initial motion to dismiss, as the Amended Complaint does not fix the

problems present in the original complaint.  Express Scripts has conferred with Plaintiff's counsel regarding this motion, and Plaintiff opposes it.

## **INTRODUCTION**

NMPSIA had a contractual relationship under which Express Scripts provided pharmacy benefit management ("PBM") services to Plaintiff. Under that contract, Express Scripts agreed that it would remit to NMPSIA a minimum amount received from pharmaceutical manufacturers (a rebate guarantee) and certain drug discounts. In the present lawsuit, NMPSIA alleges Express Scripts failed to comply with the rebate guarantee and drug discount provisions of the contract.

Whether NMPSIA is entitled to recover from Express Scripts turns solely on the terms of the parties' negotiated contract. Recognizing that there is an express contract between the parties, Express Scripts did not previously and is not now moving to dismiss NMPSIA's breach of contract claim (its first count). However, NMPSIA's remaining causes of action should be dismissed because neither of them can be asserted when the parties' relationship and the parties' obligations stem solely from an express contract. New Mexico law is clear that any duty giving rise to a common-law or statutory tort claim must be independent and separate from any contractual duty. In other words, a tort claim cannot survive if the only source of the duty alleged stems from the parties' contract. This court has also held that mere failure to uphold a contractual obligation, without more, cannot serve as the misrepresentation that establishes a claim under New Mexico's Unfair Trade Practices Act.

NMPSIA and Express Scripts' contract controls. If the contract did not require Express Scripts to perform as NMPSIA alleges, then NMPSIA *cannot* recover. NMPSIA's attempt to make this case something more than a breach of contract dispute – in other words, its attempt to expand Express Scripts' obligations beyond the contours of the contract – should be rejected.

2

For these reasons, as more fully outlined herein, the Court should dismiss, with prejudice, BCBSM's Second and Third counts, leaving the parties to litigate and resolve this dispute under the remaining breach of contract claim.[1]

## BACKGROUND

NMPSIA is responsible for purchasing health insurance coverage for public school districts, post-secondary educational entities, and charter schools. (Am. Compl., ECF No. 11, at ¶ 1). Express Scripts is a PBM that contracts with health plans to administer prescription drug benefits. Express Scripts and NMPSIA entered into a Pharmaceutical Benefits Management Services Agreement ("Agreement") effective July 1, 2018, under which Express Scripts agreed to serve as the PBM for NMPSIA and the members of its health plans. (*Id.* at ¶¶ 5, 7). The parties executed an Amendment to the Agreement effective January 1, 2020. (*Id.* at ¶ 6).

Express Scripts' role as a PBM includes negotiating with pharmaceutical manufacturers for reduced drug costs and rebates. Under the Agreement, Express Scripts agreed to remit to NMPSIA a minimum guaranteed amount of the manufacturer rebates that Express Scripts received for drugs subject to certain exclusions. (*Id.* at ¶¶ 8, 16). NMPSIA claims Express Scripts breached the Agreement by failing to include claims for "Dispense as Written" ("DAW") prescriptions in the rebate calculation. (*Id.* at ¶ 12)

NMPSIA also alleges that Express Scripts failed to comply with contractual provisions relating to guaranteed drug cost discounts and which prescription drug claims were included within the calculation of those pricing discounts. (*Id.* at ¶¶ 16-17). Specifically, NMPSIA points to a sentence in the Agreement which states: "ESI will pay the shortfall, if any, between [NMPSIA's]

---

[1] Consistent with federal case law on this point, Express Scripts has not filed an Answer to this cause of action at this time. *See* Fed. R. Civ. P. 12(a)(4)(A); *Strobel v. Rusch*, No. CIV 18-0656, 2020 W 3893071, at *2-3 (D.N.M. July 10, 2020) (holding plaintiff's partial motion to dismiss defendant's counterclaims tolled the deadline for responsive pleadings until the court addressed that motion).

net cost and the applicable guarantee, excluding claims with $0 cost to [NMPSIA]." (*Id.* at ¶ 18). NMPSIA contends that this sentence in the Agreement means that Express Scripts was required to exclude "claims with $0 cost," so called "zero-balance-due-claims," from the pricing discount guarantee calculations. (*Id.* at ¶ 19). Express Scripts reads the contractual provision differently. (*Id.* at ¶ 20).

NMPSIA's lawsuit seeks the payment of the rebates and drug discounts that it believes should be paid by Express Scripts under the terms of the Agreement. NMPSIA further seeks treble damages for what it alleges are violations of the New Mexico Unfair Practices Act ("UPA").

## LEGAL STANDARD

Rule 12(b)(6) provides for dismissal of a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (concluding that a plausible claim must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action"). Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Thomas v. Kaven*, 765 F.3d 1183, 1190-91 (10th Cir. 2014). In ruling on a motion to dismiss, the Court may consider the complaint and documents that are referenced in the plaintiff's complaint and that are central to the plaintiff's claims. *Unitednet, Ltd. v. Tata Comms. Am., Inc.*, No. 1:21-cv-01081, 2022 WL 1604802, at *4, n.2 (D.N.M. May 19, 2022).

4

## ARGUMENT

**A. NMPSIA's Second Count for Breach of Fiduciary Duties Must Be Dismissed Because the Claim is Duplicative of NMPSIA's Breach of Contract Claim, and Because NMPSIA Does Not Allege Sufficient Facts to Establish the Existence of a Fiduciary Relationship.**

NMPSIA's claim for breach of fiduciary duty alleges nothing more than that Express Scripts failed to pay NMPSIA amounts that NMPSIA believes were owed by Express Scripts under the parties' Agreement. NMSPIA also fails to allege, other than in a conclusory manner, any facts establishing Express Scripts as a fiduciary. Because clear and long-standing New Mexico law prohibits a party from asserting a tort claim when the duty stems solely from contractual obligations, NMPSIA's breach of fiduciary duty claim must be dismissed.

### i. NMPSIA Fails to Allege Facts Establishing that Express Scripts Was a Fiduciary.

Despite taking the opportunity to replead to try to allege facts supporting the existence of a fiduciary duty, NMPSIA's Amended Complaint still fails to plausibly allege that Express Scripts owed NMPSIA a fiduciary duty as a result of statute or because they had a relationship of trust and confidence. Count II should be dismissed for failing to plead the existence of any fiduciary duty.

To state a claim for breach of fiduciary duty in New Mexico, a plaintiff must allege "duty, breach of duty, proximate cause, and damages." *Horizon/CMS Healthcare Corp. v. American Continental Ins. Co.*, No. CV 99-966, 2000 WL 36740002, at *4 (D.N.M. May 2, 2000) (*citing GCM, Inc. v. Kentucky Central Life Ins. Co.*, 1997-NMSC-052, ¶ 17, 124 N.M. 186). A fiduciary duty exists where special confidence has been placed in a party "who in equity and good conscience is bound to act in good faith and with due regard to the interests of one reposing the confidence." *Moody v. Stribling*, 1999-NMCA-094, ¶ 18, 127 N.M. 630 (citations omitted). An

HB: 4883-3106-6009.1

"arm's-length commercial transaction . . . cannot support a claim for breach of fiduciary duty." *King v. Estate of Gilbreath*, No. 13-862, 2015 WL 12866451, at \*5 (D.N.M. Sept. 29, 2015) (*citing Branch v. Chamisa Dev. Corp. Ltd.*, 2009-NMCA-131, ¶ 41, 147 N.M. 397).

The Amended Complaint contains two paragraphs that purport to allege the existence of a fiduciary duty. First, the Amended Complaint (¶ 29) alleges that a duty exists under the New Mexico Insurance Code, NMSA 1978 § 59A-12A-1 (1989). This provision, however, does not create or impose fiduciary duties. Rather, it merely defines the ***scope*** of the Insurance Code, stating that it applies to those "administrators" who act "in a fiduciary capacity." *Id.* This language does not say that all entities having any role within insurance are fiduciaries, and it certainly does not impose such obligations upon PBMs like Express Scripts, which are not insurers or in the business of administering insurance (nor does the Amended Complaint allege that Express Scripts is an insurer).

Second, the Amended Complaint alleges that Express Scripts' "erroneous construction of the Amendment, and its consequent breach of the Agreement" created fiduciary duties. (Am. Compl. 30). A party that breaches a contract does not become a fiduciary merely by virtue of committing the breach. The Amended Complaint still fails to allege any special duty of trust and confidence requested by NMPSIA and accepted by Express Scripts.

In reality, Express Scripts simply did not operate in a fiduciary capacity in performing services under the Agreement. Rather, numerous courts have considered whether PBMs like Express Scripts are fiduciaries of health plans and rejected that very argument. *See In re Express Scripts, Inc., PBM Litig.*, No. 4:05-MD-01672, 2008 WL 2952787, at \*9–\*11 (E.D. Mo. July 30, 2008); *Doe 1 v. Express Scripts, Inc.*, 837 F. App'x 44 (2d Cir. 2020); *Lynch v. Nat'l Prescription Admins., Inc.*, 795 F. App'x 68, 69 (2d Cir. 2020); *In re Express Scripts/Anthem ERISA Litig.*, 285

F. Supp. 3d 655 (S.D.N.Y. 2018); *see also Moeckel v. Caremark, Inc.*, 622 F. Supp. 2d 663, 677-78 (D. Tenn. 2007); *Mulder v. PCS Health Sys., Inc.*, 432 F. Supp. 2d 450, 459-60 (D.N.J. 2006); *DeLuca v. Bickley v. Caremark Rx, Inc.*, 361 F. Supp. 2d 1317, 1332 (N.D. Ala. 2004).

Accordingly, NMPSIA has failed to allege facts sufficient to establish that Express Scripts was a fiduciary or that any special relationship of trust and confidence existed between the parties. For this reason, NMPSIA's breach of fiduciary duty claim fails to state a claim upon which relief may be granted.

ii.     **NMPSIA Fails to State a Tort Claim Separate from its Contract Claim.**

NMPSIA's claim for breach of fiduciary duty fails for the additional reason that any duties that Express Scripts owed NMPSIA fell solely under the Agreement, and no separate and independent duties were owed outside that Agreement.

"The Tenth Circuit has strongly cautioned against conflating 'the concept of contractual duties, which are voluntarily bargained for, with the concept of tort duties, which are largely imposed by law[.]" *Qwest Corp. v. City of Santa Fe*, No. 10-CV-0617, 2013 WL 12241274, at *10 (D.N.M. Feb. 8, 2013) (*citing Isler v. Tex. Oil & Gas Corp.*, 749 F.2d 22, 23 (10th Cir. 1984)). Accordingly, while "the presence of a contractual relationship does not extinguish the possibility of tort recovery," "[t]he duty giving rise to the tort claim **must exist independent of any contractual obligations**." *Id.* (emphasis added). Specifically, "when the facts alleged in the tort claim are precisely the same as those alleged in the contract claim, the tort claim is not viable." *Id.* (internal citations omitted). These rules are "tethered in the New Mexico courts' 'concept of freedom of contract and notions of contractually assumed duties.'" *Reservations Unlimited, LLC v. Newtek Small Bus. Fin., LLC*, No. CV 19-1061, 2020 WL 6158135, at *5 (D.N.M. Oct. 21, 2020) (*citing Elliott Indus. Ltd. P'ship v. BP Am. Prod. Co.*, 437 F.3d 1091, 1116 (10th Cir. 2005))

(dismissing plaintiff's tort claims pursuant to Rule 12(b)(6) where plaintiff failed to plead facts alleging a duty owed by the defendant separate from the parties' contractual obligations).

In *Reservations Unlimited*, the court dismissed the plaintiffs' tort claims for negligent misrepresentation, negligence, and fraudulent misrepresentation, finding that the plaintiffs' "argument that the contractual relationship between the parties serves as the basis for the imposition of a tort duty fails under New Mexico law." *Id.* at *4. The contract at issue in *Reservations Unlimited* was a loan agreement for the purchase of commercial property that the plaintiffs alleged was contingent on a certain appraisal value. *Id.* at *1. However, the plaintiffs alleged that the defendant failed to disclose the fair market value of the property and brought a breach of contract claim as well as the tort claims described above. *Id.* Similar to a breach of fiduciary duty claim, [2] the plaintiffs alleged that the defendant owed them a legal duty and argued that the defendant owed this duty because the defendant "knew that the Plaintiffs were operating under a mistaken belief of fact." *Id.* at *3. The plaintiffs also alleged that a special relationship existed between the parties because the defendant placed the plaintiffs in a "position of peril," and because the defendant had a "contractual duty to disclose the appraisal." *Id.* at *4.

The *Reservations Unlimited* court rejected the plaintiffs' theories of duty, reasoning that "the duty giving rise to their tort claim must exist ***independent of*** any contractual obligations." *Id.* (emphasis added). Because the plaintiffs failed to allege any facts supporting a duty owed by the defendant outside of its contractual obligations, the court held that the plaintiffs did "not demonstrate[] that a duty should be imposed on Defendants through any of their three proposed

---

[2] *See Richter v. Van Amberg*, 97 F. Supp. 2d 1255, 1261 (D.N.M. 2000) ("The claim for breach of fiduciary duty 'corresponds to a cause of action for negligence, substituting the fiduciary duty for the standard of care.'").

legal theories." *Id.* at *5. Accordingly, the court dismissed the plaintiffs' tort claims pursuant to Rule 12(b)(6). *Id.*

The Amended Complaint refers to Express Scripts' "erroneous construction of the Amendment, and its consequent breach of the Agreement" as creating fiduciary duties, and it alleges that Express Scripts "breached its fiduciary duties to NMPSIA in promoting, drafting, negotiating, construing, and administering the AWP Discount Guarantees under the Amendment." (Am. Compl. ¶¶ 30-31). These conclusory allegations are nothing more than references back to the breach of contract claim, and they make it clear that the breach of fiduciary duty claim is indistinguishable from the breach of contract claim and certainly not separate and independent of it. The claim for breach of fiduciary duty, as amended, must be dismissed because it continues to fail to allege any duty or obligation that was separate and apart from any duties or obligations that Express Scripts allegedly owed under the Agreement.

Because NMPSIA's breach of fiduciary duty claim stems solely from the parties' Agreement, and because NMPSIA has failed to plead any facts establishing Express Scripts as a fiduciary, NMPSIA's claim for breach of fiduciary duty must be dismissed with prejudice.

**B. NMPSIA's Claim for Violation of the Unfair Practices Act Must Be Dismissed Because the Gravamen of the Complaint is for Breach of Contract, and Because Plaintiff Fails to Allege a Knowing Misrepresentation by Express Scripts**

In amending its claim for violation of the New Mexico Unfair Practices Act ("UPA") in response to Express Scripts' initial motion to dismiss, NMPSIA did nothing more than add conclusory sentences that repeat the elements of a UPA claim. NMPSIA alleged no additional facts to correct the deficiencies Express Scripts previously raised, so Express Scripts' arguments for dismissal remain the same.

HB: 4883-3106-6009.1

NMPSIA's claim for violation of the UPA must be dismissed for the same reason that the breach of fiduciary duty claim must be dismissed:  because the claim is not separate from NMPSIA's breach of contract claim and it seeks to improperly impose extracontractual duties on Express Scripts. NMPSIA's UPA claim must also be dismissed because NMPSIA has failed to allege facts that Express Scripts made a knowing misrepresentation to NMPSIA.

### i.     A UPA Claim May Not Be Just a Repackaged Breach of Contract Claim.

The New Mexico UPA bars "[u]nfair or deceptive trade practices and unconscionable trade practices in the conduct of any trade or commerce." NMSA 1978, § 57-12-3. A plaintiff must establish four elements to invoke the UPA:

> (1) a false or misleading statement or representation by the defendant; (2) knowingly made in connection with the sale, lease, rental, or loan of goods or services; (3) which occurred in the regular course of the defendant's trade or commerce; and (4) was of the type that may, tends to, or does deceive or mislead any person.

*Walker v. Emergency Staffing Solutions, Inc.*, No. 16-CV-1103, 2017 WL 3206641, at *5 (D.N.M. Feb. 2, 2017) (citing *Stevenson v. Louis Dreyfus Corp.*, 1991-NMSC-051, ¶ 13, 112 N.M. 97).

Critically, because the "gravamen of an unfair trade practice is a misleading, false, or deceptive statement made *knowingly in connection with* the sale o[f] goods or services . . . **[t]he mere failure to uphold a contractual obligation, therefore, cannot itself serve as the misrepresentation that brings a claim under the UPA**." *Walker*, 2017 WL 3206641, at *7 (italics in original) (bold emphasis added).  "[I]f mere failure to perform were sufficient, every breach of contract case would be a violation of the UPA." *Id.* (internal citation omitted); *see also Nanodetex Corp. v. Sandia Corp.*, No. 05-1041, 2007 WL 4356154, at *5 (D.N.M. July 26, 2007) (holding a "garden-variety breach-of-contract issue" does not "implicate the UPA.").

Here, NMPSIA essentially repackages its breach of contract claim as a claim for violation of the UPA and seeks to take a second bite at the apple should NMPSIA's interpretation of the relevant contract term be incorrect. Specifically, NMPSIA alleges that "[t]o the extent that ESI's interpretation of the AWP Discount Guarantees in the Amendment is determined to be correct, ESI knowingly made false or misleading statements . . . in promoting, negotiating, and otherwise communicating with NMPSIA about the Amendment." (Am. Compl. ¶ 35). In other words, NMPSIA claims that if it loses on its breach of contract claim – if Express Scripts' interpretation of the Agreement is correct, such that Express Scripts did not breach its contract with NMPSIA – Express Scripts should nonetheless be held liable for a UPA violation. It is attempting a heads-we-win, tails-you-lose scenario, which is not the purpose of the UPA, nor does New Mexico law allow the UPA to be used as a back-up plan for a failed breach of contract claim.

Under clear New Mexico law, the basis of a claim for violation of the UPA cannot also be the basis of the breach of contract claim, nor does a "party's ultimate failure to perform its obligations under a contract . . . create a 'misrepresentation.'" *Walker*, 2017 WL 3206641, at *8. Accordingly, NMPSIA's claim for violation of the UPA merely restates its breach of contract claim, and it should be dismissed on this ground.

### ii. NMPSIA's UPA Claim Is Precluded as It Improperly Imposes Extracontractual Duties on Express Scripts.

The Tenth Circuit has explained that where "the contract specifically define[s] the rights and duties of the parties," any "extracontractual tort duty regarding such [rights and duties]" is thereby precluded. *Isler v. Texas Oil & Gas Corp.*, 749 F.2d 22, 24 (10th Cir. 1984).

For its UPA claim, NMPSIA attempts to impose a duty or obligation on Express Scripts by alleging that Express Scripts failed to disclose the "impact" of a term of the Agreement that NMPSIA *explicitly requested* Express Scripts add to the Amendment to the Agreement. (Am.

Compl. ¶ 23). NMPSIA also alleges that Express Scripts made a representation during contractual negotiations that the Amendment would "save [NMPSIA] . . . money." (*Id.* ¶ 22). Not only does NMPSIA not cite the source of this quotation, but NMPSIA attempts to create extracontractual duties owed by Express Scripts in order to bring its claim under the UPA. The rights and obligations of the parties were outlined in the parties' Agreement and the 2020 Amendment to the Agreement.

The UPA does not require one contracting party to explain to the other contracting party what it thinks and believes any contract provision to mean. NMPSIA is a sophisticated entity with the assistance of sophisticated consultants,[3] who engaged with Express Scripts in an arms-length negotiation of a business-to-business contract. No law requires a party to disclose all of its thoughts and impressions during such a negotiation, and courts faced with similar facts have found no obligations or duties for a party to a contract to explain its contract interpretations to the other party. *See Logan v. Bank of Am., N.A.*, No. 2:12-CV-00191, 2012 WL 5874364, at *3 (D. Utah Nov. 20, 2012) (holding "one party to an agreement does not have a duty to ensure that the other party has a complete and accurate understanding of all terms embodied in a written contract"); *Stonebrae, L.P. v. Toll Bros.*, No. C-08-0221, 2010 WL 114010, at *6 (N.D. Cal. Jan. 7, 2010) (finding "no authority supporting the contention that a contracting party has an obligation to tell the other contracting party what its interpretation of the terms of a contract are, particularly when the terms on point are expressed in writing.").

The only duties owed by Express Scripts that are recognized by law and sufficiently alleged in the Amended Complaint are those set forth in the parties' contract. NMPSIA's claim for

---

[3] *See* Am. Compl. ¶¶ 11-12, 17, 18 (referring to NMPSIA's consultant The Segal Group, Inc.).

violation of the UPA imposes non-existent extracontractual duties on Express Scripts and should therefore be dismissed.

### iii.   NMPSIA Fails to Allege Facts Sufficient to State a Violation of the UPA.

Finally, the Amended Complaint still fails to allege facts sufficient to state a claim under the UPA. First, NMPSIA has alleged no facts that Express Scripts made a false or misleading statement, much less that Express Scripts *knowingly* made a false or misleading statement. NMPSIA alleges that Express Scripts – at NMPSIA's direction – added a sentence back into the Amendment to the Agreement. (Am. Compl. ¶ 23). NMPSIA claims that Express Scripts did so without "disclosing that the 'impact' of the sentence as ESI interpreted it would be significantly in ESI's favor." (*Id.*). In alleging its actual claim under the UPA, NMPSIA only states that "[t]o the extent that ESI's interpretation of the . . . Amendment is determined to be correct," ESI engaged in unfair or deceptive trade practices. (*Id.* ¶ 35).

NMPSIA fails to allege any facts that Express Scripts made a false or misleading statement, much less that Express Scripts did so ***knowingly***. *See U.S. ex rel. Custom Grading, Inc. v. Great Am. Ins. Co.*, 952 F. Supp. 2d 1129, 1268 (D.N.M. 2013) (dismissing under Rule 12(b)(6) plaintiff's claim for violation of the UPA where plaintiff failed to allege that defendant "made any false or misleading statement, []or that it made such a statement knowingly."). The Amended Complaint's conclusory sentence that Express Scripts "willfully" engaged in deceptive trade practices is not an allegation of ***fact*** that satisfies the plausibility standard.

The District of New Mexico has recognized that "the UPA does not appear to have been enacted to protect sophisticated parties from conflicts in commercial dealings, but to protect consumers." *Id.* at 1268. NMPSIA could have requested that terms be included within the Agreement, requested that terms be excluded, and requested that Express Scripts provide more

information about terms. A UPA claim may not be premised upon a sophisticated parties' regret about the terms of a contract it had full power to negotiate.

NMPSIA's UPA claim is nothing more than that NMPSIA asked that a provision be included within the Agreement and Express Scripts complied. Accordingly, NMPSIA has failed to allege facts establishing the first two elements of a claim for violation of the UPA, and therefore its third cause of action must be dismissed.

## **CONCLUSION**

For the foregoing reasons, Express Scripts respectfully asks that the Court dismiss Plaintiff's second and third counts of its Amended Complaint with prejudice, leaving the parties to resolve this dispute under Plaintiff's breach of contract claim.

Respectfully submitted,

*/s/ Benjamin Allison*
Benjamin Allison
Michael Woods
BARDACKE ALLISON MILLER LLP
141 E. Palace Ave, 2nd Floor
Santa Fe, NM  87501
(505) 995-8000
ben@bardackeallison.com
michael@bardackeallison.com

Christopher A. Smith (*association of attorney filed*)
Elizabeth A. Bozicevic (*association of attorney filed*)
Emily Holtzman (*association of attorney filed*)
HUSCH BLACKWELL LLP
8001 Forsyth Blvd., Suite 1500
St. Louis, MO 63105
Telephone: 314.480.1500
Facsimile: 314.480.1505
elizabeth.bozicevic@huschblackwell.com
chris.smith@huschblackwell.com
emily.holtzman@huschblackwell.com

*Counsel for Express Scripts, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 2, 2024, the foregoing **DEFENDANT EXPRESS SCRIPTS, INC.'S MOTION TO DISMISS THE SECOND AND THIRD COUNTS OF PLAINTIFF'S AMENDED COMPLAINT AND MEMORANDUM IN SUPPORT** were filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

BARDACKE ALLISON MILLER LLP

*/s/ Benjamin Allison*
Benjamin Allison